*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEONTEA JAMAR WHITE,

        Defendant-Appellant.

UNPUBLISHED
April 23, 2020

No. 337623
Wayne Circuit Court
LC No. 16-005731-02-FC

Before: M. J. KELLY, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for first-degree felony murder, MCL 750.316(1)(b), two counts of armed robbery, MCL 750.529, assault with intent to do great bodily harm less than murder, MCL 750.84, receiving or concealing stolen property valued between $1,000 and $20,000, MCL 750.535(3)(a), and possession of a firearm during the commission of a felony, MCL 752.227b. He was sentenced to life imprisonment without parole for the murder conviction, life imprisonment for each armed robbery conviction, 5 to 10 years' imprisonment for the assault conviction, and 1 to 5 years' imprisonment for the receiving or concealing stolen property conviction, to be served concurrently, but consecutive to a two-year term of imprisonment for the felony-firearm conviction. Finding no errors warranting reversal, we affirm defendant's convictions and sentences, but remand for the ministerial correction of the judgment of sentence.[1]

---

[1] Defendant points out that there are contradictions in the record pertaining to this conviction. The information, the jury verdict as read by the foreperson into the record, and the verdict form reflect that defendant was convicted of assault with intent to commit murder, MCL 750.83. Indeed, the trial court commenced the sentencing by delineating the convicted offenses and expressly stated that defendant was convicted of assault with intent to commit murder. However, when the actual sentence was imposed, the trial court improperly stated that the sentence was for assault with intent to commit great bodily harm. This misnomer was repeated on the judgment of sentence which listed the convicted offense as assault with intent to commit great bodily harm instead of assault

# I. BASIC FACTS

Defendant's convictions arise from two robberies that occurred in the city of Detroit on May 6, 2016. Etoh Walker and Aaron Foster were walking in the area of Packard and Savage streets when a dark colored Dodge Intrepid pulled up. Two of the three men inside jumped out of the car with weapons. A gunman pointed a semiautomatic weapon at Walker's face and took $10 from him before returning to the car. Walker observed defendant point an AK-47 rifle at Foster, and Foster turned over his sneakers and belt to defendant. Defendant returned to the car with Foster's belongings. As Foster and Walker ran, defendant shot Foster in the back, killing him.

Shortly thereafter, Kyle Upshaw was in front of his home on Meade Street cleaning his car. Suddenly, defendant and a second gunman exited a blue Intrepid, ran up to Upshaw, pointed their guns at him, and demanded money. Upshaw yelled back that he did not have money or anything else on his person. Daniel Claxton, Upshaw's brother, was in the home and heard the yelling. He looked out and saw Upshaw held at gunpoint by defendant, who was armed with an AK-47 assault rifle, and a second gunman. Claxton stepped out onto the porch and began to fire his own weapon toward the gunmen who returned fire. Defendant shot Claxton, and he dropped his weapon and went into the home to retrieve another weapon. Upshaw had a weapon on his person and also fired at his assailants. Defendant and the second gunman returned to their car and were driven from the scene. From inside, Claxton saw the men get into a purple Stratus, but he later testified it may have been a "purple-blue" Intrepid.

Upshaw found Claxton in the home and drove him to the nearest hospital. After Claxton was taken to surgery, Upshaw was walking with a police officer when he saw a man[2] sitting on top of a blue Intrepid with some windows shot out, and the doors had multiple bullet holes. The ignition of the vehicle was damaged, and it was reported as stolen. Apparently, Claxton had shot defendant in the torso, and the driver took defendant to the same hospital for medical treatment. Although the driver asserted that he merely came upon defendant who was shot and drove him to the hospital, defendant claimed that he was with the driver and a third man when their vehicle was fired upon. However, Foster's shoes and belt were found in the stolen car.

Although Walker, Upshaw, and Claxton gave different descriptions of defendant's hairstyle, they all identified him as the shooter with the AK-47. The men also gave different descriptions of the make, model, and color of the car used by the robbers. Additionally, a shell casing recovered from the scene of Foster's shooting was fired from the same gun as shell casings found at the shooting scene between defendant, the second gunman, Claxton, and Upshaw. Defendant did not testify at trial, but raised the theory of misidentification. Specifically, he challenged the witnesses' inability to agree on the make, model, and color of the vehicle used in

---

with intent to commit murder. Accordingly, we remand to the trial court for the ministerial correction of the judgment of sentence to reflect the conviction and sentence was for assault with intent to commit murder, MCL 750.83.

[2] The driver was identified as Joshua Stewart. Defendant and Stewart were tried together, but by separate juries. Stewart's convictions are not at issue in this appeal.

the shooting as well as their various descriptions of defendant's hairstyle as dreadlocks, braids, and cornrows when he wore an afro. Despite the defense theory, the jury convicted defendant as charged.

## II. PROSECUTORIAL MISCONDUCT[3]

First, defendant alleges that the prosecutor denied him a fair trial by personally attacking his character in closing argument. We disagree.

When prosecutorial statements are not challenged with contemporaneous objections and requests for curative instructions, this Court reviews the issue for plain error affecting the defendant's substantial rights. *People v Solloway*, 316 Mich App 174, 201-202; 891 NW2d 255 (2016). Defendant failed to show plain error affecting his substantial rights.

Prosecutorial misconduct issues are evaluated on a case-by-case basis. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). To obtain relief for a claim of prosecutorial misconduct, the test is whether defendant was denied a fair and impartial trial. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). When a claim of misconduct is premised on a prosecutor's statements, the remarks must be examined in context to determine if the defendant was denied a fair and impartial trial. *Mullins*, 322 Mich App at 172. The statements must be assessed in light of the defense arguments and the relationship between the comments and the evidence presented at trial. *Id*. With regard to argument, the prosecutor has great latitude and is free to argue the evidence and all reasonable inferences arising from the evidence as it relates to the theory of the case. *Id*. Nonetheless, reversal is unwarranted if the alleged prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

A prosecutor may not express a personal opinion of guilt and may not denigrate a defendant with prejudicial or intemperate comments. *People v Bahoda*, 448 Mich 261, 283; 531 NW2d 659 (1995). When arguing the evidence and all reasonable inferences arising from the evidence as it pertains to the prosecutor's theory of the case, the argument need not be made in the blandest possible language. *Id*. at 282; *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007).

Defendant contends that the prosecutor improperly commented during closing argument that (1) defendant is a "robber" and that is "what he does" and (2) defendant "has no heart, he has no soul." The prosecutor's comment that defendant is a robber was not improper, but a fair comment on the evidence. Defendant was driving in a stolen vehicle with two other individuals, and he carried an AK-47 with him. They engaged in the robbery of Foster and Walker. A short time later, they attempted to rob Upshaw. Thus, the prosecutor's comment that defendant was a

---

[3] Although defendant characterizes the prosecutor's statements as misconduct, this Court recently explained that a fairer label for most claims of prosecutorial misconduct would be "prosecutorial error," because only the most extreme and rare cases rise to the level of "prosecutorial misconduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). However, we will use the phrase "prosecutorial misconduct" because it has become a term of art in criminal appeals. *Id*.

robber and that was "what he does," was not improper. Defendant failed to demonstrate plain error from the prosecutor's characterization of defendant's activity and his express use of the term "robber," particularly where defendant was charged with armed robbery.

Even if we assume that the prosecutor's argument that defendant had no heart or soul was improper, he is not entitled to appellate relief. A timely objection to the challenged remark could have cured any potential prejudice through a cautionary instruction. *Watson*, 245 Mich App at 586. Jurors are presumed to follow their instructions, and jury instructions are sufficient to dispel any possible prejudice. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011); *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Even in the absence of a defense objection, the trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jury's verdict must be based solely on the properly admitted evidence, and that the court's instructions must be followed. Under the circumstances, defendant failed to establish that this isolated remark affected his substantial rights.

Defendant also contends that trial counsel was ineffective for failing to object to the prosecutor's remarks. We disagree.

Our review of this issue is limited to mistakes apparent on the record. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). To obtain a new trial premised on ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). It is presumed that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

Trial counsel was not ineffective for failing to object to the argument that defendant was a robber and that was what he did. The comment by the prosecutor was reasonable in light of the evidence that defendant used an AK-47 to obtain property and the charge of armed robbery. Further, defense counsel was not ineffective for failing to object to the comment that defendant did not have a heart or soul. Although motive is not an essential element of murder, it is always a relevant consideration. *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). A review of the prosecutor's closing and rebuttal argument, in context, seemingly indicates that the prosecutor argued that defendant lacked a heart and soul to explain why the murder occurred despite the fact that Foster surrendered his shoes and his belt without resistance and was running from the scene when shot in the back by defendant. Additionally, defense counsel did not respond to this argument. In light of the defense theory of the case, that defendant did not commit this offense and was misidentified, the prosecutor's argument, that the perpetrator did not have a heart or soul, did not pertain to defendant. Therefore, defendant failed to demonstrate a claim of ineffective assistance of counsel. *Vaughn*, 491 Mich at 669.

## III. DISCOVERY VIOLATION

Defendant next submits that the trial court erred by denying his request to prohibit the admission of the ballistics evidence report from trial premised on its untimely disclosure to the defense. We disagree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019). "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *Id*. at 252 (quotation marks and citation omitted). A trial court's determination regarding any remedy for a discovery violation is also reviewed for an abuse of discretion. *People v Jackson*, 292 Mich App 583, 591; 808 NW2d 541 (2011).

MCR 6.201(A)(3) provides that a party must provide the report for an expert whom the party intends to call at trial. When a discovery violation occurs, the trial court must exercise discretion to fashion an appropriate remedy for the violation which balances "the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for the noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). MCR 6.201 does not require exclusion of evidence as a remedy for a discovery violation. Rather, MCR 6.201(J) delineates examples of possible remedies for a discovery violation, including a continuance. Additionally, to be entitled to relief for a discovery violation, the defendant must establish actual prejudice. *People v Rose*, 289 Mich App 499, 525-526; 808 NW2d 301 (2010).

In the present case, defense counsel argued that the ballistics report was untimely because of the dates within the report regarding the testing. However, the prosecutor argued that the complete *analysis* was not submitted to the prosecutor until four days before trial, and he immediately forwarded the report to the defense. The defense did not contest this assertion. Furthermore, the defense did not seek an alternate remedy, such as a continuance, to allow time to review the report or obtain a contrary opinion. Rather, the report was disclosed to the defense four days before trial, and the evidence was not admitted until the fourth day of trial. After the trial court's ruling denying the request to exclude the report, the defense did not revisit the issue to request additional time to contest the findings of the report. Finally, defendant failed to demonstrate actual prejudice as a result of the trial court's ruling. *Rose*, 289 Mich App at 525-526. The defense theory of the case was that defendant was misidentified as the shooter as evidenced by the inconsistent descriptions of the perpetrator and the vehicle. Thus, the ballistics report did not bear on the defense of the charges.

In sum, the trial court did not abuse its discretion by ruling that the production of the ballistic report shortly before trial was not grounds to exclude the report from trial, and defendant failed to establish actual prejudice from its late production.

Defendant's convictions and sentences are affirmed, but we remand for the ministerial correction of the judgment of sentence. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto